**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Taser International, Inc., ) | No. CV-00-945-PHX-ROS |
| ) | |
| Plaintiff, ) | **OPINION AND ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Hennigan International, Inc., et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

This case involves the relationship between Taser International, Inc. ("Taser") and Thomas Hennigan, et al. ("Hennigan").[1] After the rulings on summary judgment, the issues remaining for trial were whether Taser and Hennigan had entered into a contract and whether Hennigan was entitled to compensation pursuant to that contract or pursuant to the theory of *quantum meruit*. On day three of the bench trial, Taser moved to dismiss the claims of Hennigan. (Tr. p. 475) The Court heard oral argument on that motion and ordered additional briefing on the issues. (Tr. 9/6/05) Based on the evidence and testimony presented at trial, Taser is entitled to judgment on the contract claim and on the *quantum meruit* claim.

**I. Standard for Judgment on Partial Findings**

Federal Rule of Civil Procedure 52 provides that " [i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the

---

[1] Defendants will be referred to collectively as "Hennigan" unless otherwise specified.

1  court may enter judgment as a matter of law against that party with respect to a claim . . . that
2  cannot under the controlling law be maintained or defeated without a favorable finding on
3  that issue."[2] As recently set forth by the Ninth Circuit, a district court "deciding whether to
4  enter judgment on partial findings under Rule 52(c) . . . is not required to draw any inferences
5  in favor of the non-moving party; rather, the district court may make findings in accordance
6  with its own view of the evidence." Ritchie v. United States, 2006 WL 1727359, at *3 (9th
7  Cir. June 26, 2006).  Thus, Hennigan is not entitled to any favorable inferences and the
8  following findings of fact constitute the Court's view of the evidence.

## II. Findings of Fact and Conclusions of Law

Taser is an Arizona corporation in the business of manufacturing and marketing stun guns, including electro-muscular disruption ("EMD") weapons known as the "Advanced Taser," "X-26," and "M-26." (Joint Revised Pretrial Order "JRPO" p.11)  EMD weapons are popular among law enforcement agencies because they allow officers to debilitate a target without the use of potentially lethal force. (Id. p.12)  Sometime in 1997 or 1998 Taser and Hennigan began having discussions regarding a business relationship.  (Doc. 63 ex. 1)  Rick Smith, the CEO of Taser, met with Hennigan on February 27, 1998.  On that date, Smith and Hennigan conducted a demonstration of the Air Taser Product for the New York Police Department.  (JRPO p.12)  There is no evidence of a written agreement between Taser and Hennigan. (Tr. p. 165)  On February 21, 2000, Taser sent Hennigan a letter terminating their relationship. (Id.)  Hennigan died on April 18, 2001. (Id.)

### A. Contract Claim

As set forth in the summary judgment rulings, and agreed to by the parties, Arizona law applies to Hennigan's claims. (See Doc. 97, 134)  Pursuant to Arizona law, "for an enforceable contract to exist there must be an offer, an acceptance, consideration, and

---

[2] Taser moved to dismiss pursuant to Rule 41. (Tr. p.475)  Rule 41(b) has been replaced by Rule 52(c) and it is the latter rule that applies here. Ritchie v. United States, 2006 WL 1727359, at *3 n.7 (9th Cir. June 26, 2006).

sufficient specification of terms so that the obligations involved can be ascertained."[3] Savoca Masonry Co., Inc. v. Homes & Son Const. Co., Inc., 542 P.2d 817, 819 (Ariz. 1975). At trial, Hennigan first took testimony from Harvey Russell. Hennigan and Russell entered into a business relationship with respect to the marketing of Taser's products in late 1997. (JRPO p.12) Russell was not present during any negotiations between Taser and Hennigan. (Tr. p.160) Russell was not aware of the content of negotiations between Taser and Hennigan. (Id.) Russell's knowledge of the alleged contract between Hennigan and Taser primarily came from conversations Russell had with Hennigan, not from conversations between Russell and Taser. (Tr. 52, 162) During a conversation Russell had with Smith, Russell related why he had started promoting Taser's products and why he continued to do so. (Tr. 91) Smith's response to Russell's statements was simply "I know that." (Tr. 92) This statement by Smith is insufficient to establish the existence of an offer, acceptance, and consideration between Taser and Hennigan.

Exhibits 13 and 14 do not support Hennigan's contract claim. Those exhibits include communications between Hennigan and Smith. In Exhibit 13, Hennigan expressed some concern to Smith about receiving payments from business generated on certain accounts. (Ex. 13) Smith responded that Taser was in the process of "putting a fully documented program in place." (Ex. 14) Smith's statement that a program was being put in place points

---

[3] Hennigan claims that the Savoca decision was substantially limited by the Arizona Supreme Court in a later decision. (Doc. 176 p.5) But the cases cited by Hennigan do not support his argument. In Schade v. Diethrich, 760 P.2d 1050, 1057 (Ariz. 1988), the Arizona Supreme Court ruled that lack of certainty regarding certain aspects of a contract did not render it unenforceable. But the court recognized that the plaintiff in that case had presented sufficient evidence of both "a bargain, consisting of promises exchanged, and consideration." Id. Here, it is not just the lack of certainty regarding certain terms at issue; instead, Hennigan failed to establish a bargain, consideration, or certainty of terms. Also, in Arok Construction Co. v. Indian Construction Services, 848 P.2d 870, 874 (Ariz. Ct. App. 1993), the issue was whether summary judgment regarding the existence of a contract was appropriate. The court held that "the evidence [was] sufficient to raise a triable issue of whether a contract exist[ed]." Id. Here, the issue is not whether there was sufficient evidence to survive summary judgment but whether Hennigan presented sufficient evidence to satisfy his burden of proof. He did not.

1 to there not being a formal contract between Hennigan and Taser at that time. Exhibit 97
2 also fails to establish that there was a contract between Hennigan and Taser. That exhibit
3 merely establishes that Taser had started using "an account management program"; it did not
4 establish that an agreement existed between Taser and Hennigan. The other exhibits offered
5 by Hennigan similarly failed to establish the existence of a contract. (I.e. ex. 100, 224, 316)

6 The other testimony offered by Hennigan did not establish that a contract existed.
7 Neither Kathleen Hanrahan, Patrick Smith, nor Stacie Sundberg adequately testified to the
8 existence and content of an agreement between Taser and Hennigan. Hennigan did not meet
9 the burden of establishing an "offer, an acceptance, consideration, and sufficient specification
10 of terms so that the obligations involved can be ascertained." Savoca, 542 P.2d at 819. There
11 was no clear testimony or evidence regarding what Taser and Hennigan had agreed to do and
12 absent such evidence there is an insufficient basis for finding a contract existed.
13 Accordingly, Taser's motion for judgment on partial findings regarding the contract claims
14 will be granted.

15 **B. Quantum Meruit**

16 Having failed to carry his burden of establishing the existence of a contract,
17 Hennigan's alternative theory of *quantum meruit* becomes relevant. See USLife Title Co. of
18 Arizona v. Gutkin, 732 P.2d 579, 584 (Ariz. Ct. App. 1986) ("[O]ur courts have repeatedly
19 held that the existence of a contract specifically governing the rights and obligations of each
20 party precludes recovery for unjust enrichment."). To recover pursuant to *quantum meruit*
21 Hennigan had to prove "(1) that he [was] entitled to restitution, i.e., that [Taser] was 'unjustly
22 enriched at [his] expense' . . . ; (2) that he rendered services which benefitted [Taser]; and (3)
23 that he conferred this benefit under circumstances which would render [Taser's] retention of
24 the value without payment inequitable." Landi v. Arkules, 835 P.2d 458, 467 (Ariz. Ct. App.
25 1992) (quoting Restatment (First) of Restitution §§ 1, 40). Hennigan also had to present *"a*
26 *reasonable basis in the evidence for the trier of fact to fix compensation.*" Short v. Riley, 724
27 P.2d 1252, 1255 (Ariz. Ct. App. 1986) (emphasis added) (quoting Nelson v. Cail, 583 P.2d
28 1384, 1387 (Ariz. Ct. App.1978)).

- 4 -

Russell and Hennigan both performed a variety of services for Taser. For example, Russell or Hennigan attended agency demonstrations, a mock prison riot, and trade shows. (Tr. 293, 80, 131, 141) Taser's counsel admitted during trial that the work Russell and Hennigan performed prior to February 2000 was not gratuitous. (Tr. 538) But Hennigan did not produce expert witness testimony, lay witness testimony, or documentary evidence linking his activities to later sales by Taser. Hennigan also failed to present any reliable method of measuring the benefit received by Taser as a result of his activities.[4] Thus, the claim for recovery pursuant to *quantum meruit* must be rejected.

At the final pretrial conference, Hennigan's counsel and the Court discussed the need for an expert witness at trial. The Court expressed its belief that, on the issue of *quantum meruit*, "an expert would not be needed or not be useful." (Tr. 7/28/05 p.40) Hennigan's counsel responded,

> Your Honor, you may very well be a hundred percent right. In fact, I am inclined to agree with you. I simply had reserved [the possibility of calling an expert.] But if Your Honor were to say, well, I don't see how an expert is going to help me other than, you know, the normal arguments by counsel and the evidence before you, *I would say that's fine. Let's go that way*.

(Id. emphasis added) The Court then stated that if Hennigan's counsel agreed, "there will be no expert testimony on damages, that is, quantum meruit." Hennigan's counsel agreed, but wished to reserve the possibility of an expert on "the calculation issue." While this conversation represents the Court's initial opinion regarding expert testimony, Hennigan was free to reopen the issue at trial if it became apparent that such testimony was needed.

At trial, Hennigan did not call any expert to establish the value of services rendered to Taser. In fact, Hennigan persisted in his belief that such expert testimony was not necessary. When responding to Taser's Motion to Dismiss, Hennigan's counsel did not argue

---

[4] Hennigan argues that "the burden should be on [Taser] to show that Hennigan and Russell did not contribute to the later sales, even if another distributor was involved." (Doc. 168 p. 17) Hennigan does not provide any support for this shifting of the burden of proof, and the Court declines Hennigan's invitation to do so.

- 5 -

1 that he should be allowed to present additional evidence in the form of expert testimony; rather, he argued that the evidence already presented was sufficient. (Tr. 9/6/05 p.515-518) Only in his Reply to the Motion to Dismiss did Hennigan raise the possibility that he should be allowed to "choose . . . an expert and . . . present him or her." (Doc. 176 p.23) At the time of that request, it was unclear if Hennigan wished to retain a *new* expert or if an already disclosed expert would be able to provide the testimony. In light of Hennigan's failure to present such testimony during the course of his case, and his failure to identify what evidence an expert would be able to produce, Hennigan did not present any "reasonable basis in the evidence" to allow the Court to determine the appropriate amount of compensation and the *quantum meruit* claim fails. Short, 724 P.2d at 1255.

**III. Motion to Strike**

Plaintiff moved to strike certain portions of Hennigna's Reply Memorandum based on non-compliance with the Local Rules. (Doc. 177) There was some confusion regarding the form of additional briefing the Court requested at trial. Thus, the non-compliance will be excused and the motion to strike will be denied.

**IV. Remaining Issues**

The Court asked Taser what issues would remain in this case if the Court were to enter judgment in favor of Taser on both the contract and *quantum meruit* claims. (Tr. p. 575) Taser responded that the only claim remaining would be for a small amount of money allegedly owed by Hennigan. (Id.) Taser agreed to dismiss this claim without prejudice if the Court ruled in its favor on the other counts. (Id. at 576) Hennigan now claims, however, that it is undisputed that Taser owes him approximately $9,600. The Court is unable to determine whether this is a valid amount and the parties will be directed to submit briefing on that issue.

Accordingly,

**IT IS ORDERED** Henningan's claims based on an alleged contract are **DISMISSED WITH PREJUDICE** for the reasons set forth above.

1    **IT IS FURTHER ORDERED** Hennigan shall submit a brief not exceeding 17 pages
2 in length in support of his claim for approximately $9,600. That brief is due August 18,
3 2006. Taser shall submit a response also limited to 17 pages by September 1, 2006.
4 Hennigan may submit an 11 page reply by September 8, 2006.

5    **IT IS FURTHER ORDERED** Taser's Motion to Strike (Doc. 177) is **DENIED**.

7    DATED this 4th day of August, 2006.

Roslyn O. Silver
United States District Judge