**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Taser International, Inc., ) | No. CV-00-945-PHX-ROS |
| Plaintiff, ) | **OPINION AND ORDER** |
| vs. ) | |
| Hennigan International, Inc., et al. ) | |
| Defendants. ) | |

The only issue remaining is Hennigan's claim regarding unpaid commissions allegedly earned prior to February 21, 2000, the date the parties' relationship ended. For the following reasons, the Court will award Hennigan $9,591.26.

**I. Commissions Due**

Because Hennigan did not prove the existence of a contract, his claim for pre-February 21, 2000 commissions must be based on *quantum meruit*. To recover pursuant to that theory, Hennigan had to prove "(1) that he [was] entitled to restitution, i.e., that [Taser] was 'unjustly enriched at [his] expense' . . . ; (2) that he rendered services which benefitted [Taser]; and (3) that he conferred this benefit under circumstances which would render [Taser's] retention of the value without payment inequitable." Landi v. Arkules, 835 P.2d 458, 467 (Ariz. Ct. App. 1992) (quoting Restatment (First) of Restitution §§ 1, 40)). In the Joint Revised Proposed Pretrial Order, Taser made a number of statements establishing these elements for Hennigan's pre-February 21, 2000 activities. These statements are binding on

1    Taser.[1]  American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988)
2    ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial
3    admissions conclusively binding on the party who made them.").
4          According to the Joint Revised Proposed Pretrial Order, after learning of Hennigan's
5    inability to stock inventory, Taser agreed to "drop-ship" certain products directly to
6    Hennigan's customers.  After the products were shipped, "Hennigan would receive the
7    difference between the price to distributors and the price Taser charged to the customer from
8    which Hennigan procured an order but only when Taser received the customer's payment."
9    (Joint Revised Proposed Pretrial Order p.12)  Taser also stated that it was "only obligated to
10   pay commissions to Hennigan on account of receipts from sales of products shipped and
11   invoiced prior to February 21, 2000" and that Hennigan had a claim for compensation for
12   "receipts from sales of products shipped and invoiced prior to February 21, 2000." (Id. pp.4-
13   5) Accepting these statements, Taser has admitted that Hennigan rendered valuable services,
14   Hennigan is entitled to restitution, and it would be unjust for Taser not to compensate
15   Hennigan.  See Arkules, 835 P.2d at 467 (setting forth elements of *quantum meruit*).[2]
16          Hennigan had to present "a reasonable basis in the evidence for the trier of fact to fix
17   compensation."  Short v. Riley, 724 P.2d 1252, 1255 (Ariz. Ct. App. 1986).  But *quantum*
18   *meruit* is a "a flexible, equitable remedy," and a court is "free to fashion a remedy wherever

---

[1] Taser claims that these statements should be considered "statements of a legal theory" rather than admissions of fact. (Response p.7) The Court does not agree. Read in the context of the entire case, the statements are factual acknowledgments that Taser owed Hennigan for his activities prior to termination.

[2] Taser also claims that Hennigan is not entitled to compensation for any pre-February 21, 2000 activity because he has not proven that Taser received payment prior to his termination. But it would be unfair to allow Taser to avoid paying Hennigan commissions for pre-February 21, 2000 sales simply because payment was not received prior to termination. See Wakefield v. N. Telecom, Inc., 769 F.2d 109, 112 (2d Cir. 1985) (observing employers have incentive to avoid payment of commissions by terminating employees). Taser could have come forward with evidence that payment was never received on Hennigan's sales but did not.

1  circumstances and equity require." Murdock-Bryant Const., Inc. v. Pearson, 703 P.2d 1197,
2  1202 (Ariz. 1985). Unlike his *quantum meruit* claims for post-February 21, 2000 activity,
3  Hennigan presented sufficient evidence regarding his pre-termination activities. Hennigan
4  has claimed three different figures for pre-February 21, 2000 activities: $9,600.26, $9,591.26,
5  and $16,667.77. (Doc. 168,176, 182) The only explanation for these shifting figures is that
6  "further review of the numbers and data" led to revisions. (Doc. 182) The "circumstances
7  and equity require" awarding Hennigan $9,591.26, the revised amount presented by
8  Hennigan in his post-trial briefing. Id.

9  Relatively early in the case the Court determined that Hennigan and Taser did not
10 have an employee-employer relationship. (Doc. 40) That determination was based on
11 Hennigan's own claim that he entered into a "joint venture," rather than an employment
12 relationship, with Taser. (Doc. 40) Hennigan did not argue that he was an employee in the
13 Joint Revised Proposed Pretrial Order nor did he present sufficient evidence of such a
14 relationship at trial. Because there was insufficient evidence that Hennigan and Taser were
15 employee-employer, the commissions owed to Hennigan should not be trebled. See Arizona
16 Revised Statutes ("A.R.S.") section 23-355 (stating employee is entitled to recover "treble
17 the amount of the unpaid wages").

18 **II. Attorneys' Fees**

19 Pursuant to Arizona law, "a party prevailing on a *quantum meruit* claim . . . may
20 recover attorney's fees under [A.R.S.] § 12-341.01." Pelletier v. Johnson, 937 P.2d 668, 672-
21 73 (Ariz. Ct. App. 1996). An award of attorney's fees is, however, "permissive, rather than
22 mandatory." AmerisourceBergen Corp. v. Dialysist West, Inc., 445 F.3d 1132, 1139 (9th
23 Cir. 2006). When determining if a party is entitled to attorney's fees, a court should consider
24 a variety of factors. See id. (quoting Wagenseller v. Scottsdale Mem'l. Hosp., 710 P.2d 1025,
25 1049 (Ariz. 1985) (listing factors)). Having considered the relevant factors, an award of
26 attorney's fees would not be appropriate in this action.

27 Accordingly,

28

**IT IS ORDERED** the Clerk of Court shall enter judgment against Taser in the amount of $9,591.26.

**IT IS FURTHER ORDERED** the Clerk of Court is directed to close this case.

DATED this 28th day of September, 2006.

_____
Roslyn O. Silver
United States District Judge